251034, Coloniziaa v. Allied Community Resources, Inc. If you could please record. Good morning. My name is Nitor Egbarim. I represent the plaintiff, Mr. Coloniziaa, and Ms. Meg Javid, who are representative of putative class members. Your Honor, this is a case about unpaid minimum and overtime wages. Allied appellees here hired the plaintiffs as personal care living, personal care assistant, to provide living care services to Medicaid waiver participants. Now, Allied claims that the waiver participants are the employers of the plaintiff, it's our position that the evidence, the facts, show that Allied appellees, or particularly Allied resources, and its principal, the Connecticut Department of Social Services, along with the waiver participants. Allied resources wasn't a party to the provider agreement, right? Well, Allied resources drafted the provider agreement. The contract between Allied resources and the Department of Social Services required Allied to draft the provider agreement and to issue the provider agreement to the personal care assistants. Yeah, so I understand Allied provided various services, but I doesn't necessarily mean that it was bound by the agreement. Well, Your Honor, they drafted the agreement in such a way that only the provider themselves signed the agreement. No one else, other than the provider, signed the agreement that they drafted and that in the agreement they mentioned themselves along with the DSS in those agreements, in various paragraphs of that agreement, Your Honor. So to the extent that they drafted the agreement one way for the employees only to sign, then that is an agreement that, again, mentions them, mentions Allied, mentions the obligations that the employee owes to Allied. It mentions what Allied wanted from the employee in terms of supervision of the services that the plaintiffs provided, in terms of the hours of work that the plaintiffs provided. Counsel, one of the arguments that you make is that Allied approved these employees. What do you mean by approved? Thank you. What did they do to approve? Thank you, Your Honor. So the plaintiffs received a new employment package, a new employment application package from Allied, not from anyone else. Not from the waiver participants and not from the DSS. Allied required the plaintiffs to complete the application, the names, addresses, you name it, and send the application back to Allied. But what, that could be their, what they claim, a fiscal intermediary. They're not the employer. What about that makes them the employer? What makes them become the employer of these individuals that are providing services, in some cases, for their loved ones? Thank you so much, Your Honor. So under the FLSA, as well as the Connecticut Wage Law, a company who acts directly in the interest of an employer is an employer. Under what? Both the FLSA, the Fair Labor Standards Act, I believe there's a particular code of federal regulation on that. We cite that in our brief. As well as the Connecticut Minimum Wage Act, which is 31-58D. That's where it defines what an employer is. Is so a corporation that acts on behalf of or in the interest of an employer so if, not if, because the waiver participant is an employer, then Allied acting in the interest of the waiver participant makes Allied an employer in the liberal broad sense that the employer is defined. Well, we're interested in the legal sense rather than the liberal broad sense. But as to the Connecticut Minimum Wage Act, you issued an opinion because when DSS was dismissed from this case, your client pursued claims against DSS as employer. And under the test provided by the court, that court found they were not the co-employer. How does that impact the analysis in this case? That DSS was not found to be the co-employer. Yes. If at all. Thank you so much, Your Honor. So you're referring to the motion to strike that DSS filed against the first complaint, which Judge Stewart said there were no allegations in the complaint that the, as far as the elements of joint employment. Yeah. We have since amended the complaint. To make those allegations. So it's still pending? That's correct. Okay. But in particular, the CMWA section 31-58D again defines an employer to mean, in this case, a corporation acting directly as or on behalf of or in the interest of an employer in relation to employees. So acting for the participants makes allied. In addition to allied being the agent of the waiver participants. Allied did more than simply process payroll. Allied took in the 24-hour, seven days a week per diem. Set the rate of pay. Made payments directly to the plaintiffs. Required the plaintiffs to send in timesheets directly to allied and setting forth the tasks that the plaintiffs did every single day in terms of bathing, toileting, providing care for the waiver participants. And in addition to that, they were the services performed. And allied as well as kept the employment records for these plaintiffs. Kept the applications. Kept the Social Security information. Kept the driver's license. Kept the carter test. Allied hired the plaintiffs. George, the trial court was concerned that the allied did not interview the plaintiffs. While the plaintiffs themselves said the waiver participant did not interview them. All that was done because we were already taking care of these participants before allied came in. Allied simply sent them the applications to complete and sent back to allied. Allied reviewed those applications. And then put these individuals into a provider directory and also made them sign what I consider to be an employment agreement, which was only signed by the plaintiffs, not by the drafter of that document. Thank you, counsel. Good morning. My name is Brian O'Donnell. I'm from the law firm Reid & Rega, representing the two allied defendants. I'll focus my remarks on Allied Community Resources Incorporated, which was the entity that actually had the contract with the DSS. Counsel asserted that allied drafted the provider agreement. There's no evidence that allied drafted the provider agreement. The evidence is that the provider agreement came from the DSS. I would direct the court to the appellant's exhibit number 5 in their summary judgment papers. I believe it's in the appendix at A291. It's an email from allied to the plaintiffs enclosing the provider agreement. And it says in the third paragraph, it's a little bit small. I'll have to look over my glasses. I have attached to this email the DSS provider agreement form and asking them to sign it and send it back. What the contract says, the DSS contract, it's in the supplemental appendix, page A23, says that one of allied's responsibilities is allied is the contractor and the PCAs are the personal care assistants. For PCAs, the contractor agrees to obtain each PCA signature on the department's, possessive, department's approved Medicaid provider agreement. This was not a document drafted by allied. Allied did not draft the document to leave its, intentionally leave its name out, as counsel asserted. So, counsel, you distinguished the case, and I may be pronouncing it, mispronouncing it, Hardger's v. Powell. And I understand New York has a different statutory scheme. Yes. And the primary distinction you make is that in that case is that the rate of pay is determined by the fiscal intermediary. Yes. There's also the Alves case, and I'm wondering how you distinguish that case. I mean, you focused on the first. I mean, I read it, so I think I know what the answer might be, but I'd like to know from you how you distinguish the Alves case as well. I didn't focus on that case in preparation for this argument. What I recall about that case is that the Court just said this is a matter for adjudication at a later date. I think it was a denial of summary judgment. I thought in that case that it was also the issue of who pays. And looking at that opinion, the Court said, and the consumers, in this case the patients who receive the services, will routinely shop to find a fiscal intermediary with whom they wish to work and at a rate they are willing to accept. I understood the Alves case to explain the New York system as having multiple fiscal intermediaries, and the consumer selects which intermediary they want to work with, as do the aides select who they want to work with based on the rate of pay. Is that your understanding? No. Of the difference between New York and Connecticut's statutory scheme? Yes. So the situation here is that the, and this is made clear in the allied contract with the DSS, the DSS determines what services a participant should receive and sets a budget for the participant. And allied's obligation is to adhere to the budget. That's spelled out in the contract, which further spells out that if allied thinks it would deviate from the budget for any reason, it would need to get DSS's prior approval. So I think the plaintiffs, to the extent that they have a grievance, that grievance is with the DSS. What allied was doing was dispersing money in accordance with the budget and the service plan, both of which were established by the DSS. If I could go back to the provider agreement, regardless of who drafted it, I mean, it gives allied, as the fiscal agent, the approval authority before any services are to be provided. Isn't that right? And so some of it might, it looks like, are sort of, you know, HR type checklist items, criminal background checks, sort of ministerial options. But ultimate approval has to be given by allied resources. I'm sorry, Your Honor, approval of what? It says before approval by the fiscal agent to provide services. And then it talks about an effective date and new hire paperwork. So I'll make two comments about that. The allied's obligations and responsibilities, duties, are laid out in the allied contract with the DSS. A document drafted, actually we don't know who drafted it or when, who exactly drafted it, but it could not change allied's contractual rights and obligations. Those are set forth in the DSS contract. And so the DSS instructed allied to give this form to the personal care assistants who were seeking employment on behalf of these waiver participants. The DSS instructed allied to circulate that document and get signatures on it, which is what allied did. And I don't think there's a basis to conclude that that document, somebody writing something on a piece of paper, could expand allied's powers. So allied's role is described in the provider agreement. It's not relevant, in your view, to the determination of whether it is a employer. Allied's role. So the provider agreement says that allied says the DSS and its fiscal agent can terminate these personal care assistants. But allied had no such right in the DSS contract. And the fact that- So what do we do with that, I guess, is my question. I'm sorry. So what do we do with that? That's my question. What do we do with the statements in the provider agreement that, you know, give allied some responsibility to fall under the Carter factor? I think you conclude that somebody at the DSS misstated allied's abilities. There's no indication that allied- no indication otherwise that allied had the ability to terminate anybody from the program. Does that address your question, Your Honor? That's your answer to my question. I mean, I'm not sure what to do with it, but I understand your answer.  So, you know, when allied- well, allied did what they were instructed to do by the DSS. They obtained signatures on these documents, put them in the file. And our position and the district court's position was that that doesn't expand allied's contractual powers. The district court said allied's power to hire and fire the plaintiffs cannot flow from a contract to which allied was not a party. The ability to hire and fire must instead arise from allied's contract with the DSS. So are you saying that the contract- because they're not a party to the contract, even though in some of them their logo appears on the top, that they don't have the authority to fire or hire because legally they're not a contractual party? To the extent that the- well, the provider agreement is called an agreement, so I'm going to agree with you it's a contract. Allied is not a party to that whatever it is, contract statement. Let me ask you the same question I asked your opponent, which is I think we can take judicial notice that Judge Elizabeth Stewart issued an opinion relating to applying the test that's set out by the Connecticut Supreme Court under the Connecticut Minimum Wage Act when DSS was sued then in state court when they were dropped from this suit. And she concluded that they were not the employer or co-employer. What, if anything, does that impact? And I know that we have the economic reality test under the Fair Labor Standards Act, but I'm wondering how, if at all, that impacts this case. Well, we don't take a firm position on the DSS's role. Judge Stewart concluded that they were not the employer, that the employer is these people who are needing care. That at least matches with Allied's experience as laid out, I think, in the evidence, which is that the people needing care would engage a caregiver and then go in pursuit of Medicaid funds to pay that person. With respect to Ms. Magevich, she was caring for a close relative. I guess my question is, if DSS sets the budget, approves the budget, and is not a co-employer, not even a co-employer, let alone the employer, how does that impact your client that they call the fiscal intermediary? Well, if that decision is correct, which I understand the case is still pending, but if that decision by her holds up, that makes it even less likely that Allied could be in a position of an employer because Allied was just acting at the direction of the DSS to disperse money and collect documents relative to the disbursement of the payroll. Thank you, counsel. We'll hear from him. Thank you, Your Honor. Again, I referred the court to Appendix A-86, where this is a contract between the DSS and Allied, where it requires, I believe it's Paragraph 5, quote, Allied should develop for approval by the department a modified Medicaid provider agreement for all household employees. Then Paragraph 6, Allied should issue a Connecticut Medicaid provider agreement for all agency and private provider applicants who wish to perform waiver services. So Allied was required to draft and issue the provider agreement and did draft and issue the provider agreement to the plaintiffs with the logo of Allied and DSS and with the name of fiscal intermediary. Even if that's true, I think your friend's argument, as I understand it, is that the provider agreement doesn't matter here in terms of Allied's authority. That's governed by the agreement between DSS and Allied. Well, Your Honor, if you look at even the contract required Allied to do many of the things that are in the provider agreement, including credentialing, crypto background checks, supervision, issue about electronic verification timesheets, all of those. Right, various administrative responsibilities, but the ultimate hiring termination authority seemed to be governed by the agreement between DSS and Allied. Well, to the extent that Allied is the agent or acting for DSS, again, there's that language in the FLSA, acting for the DSS makes Allied a joint employer. But those are not simply administrative tasks, Your Honor. Those are actually what would be operational control over the employees, asking them to submit timesheets, report their hours, report their time. Those are all supervision, Your Honor, of these employees. Now, I'll ask the court to, again, look at this. This is not the first time that Medicaid operators have been sued by personal care assistants. You have the case Bonnet versus California Health and Welfare Agency from 1982. Same Medicaid program, same type of employees. The program administrator was held responsible. More recently, again, in California, Ray versus Los Angeles County Department of Public Social Services, again, like DSS, same type of employees, same type of waiver participants. The fiscal intermediary was determined to be an employer. And then, of course, as the court mentioned earlier, the Hadjahs Powell versus Angels in your home LLC. Again, Medicaid program where the fiscal intermediary was determined to be a joint employer. In the Albers case, Your Honor, there were disputed issues of facts that could not be determined at summary judgment level. I'm leaving that to trial, Your Honor. And that applies here. The NCO in those cases set the rate of pay, not the intermediary, whereas in this case, like DSS, set rate of pay and the method of payment, Your Honor. Thank you so much. Thank you, counsel. Thank you both. We'll take the case under review.